Joseph F. RYAN, Jr.

v.

The CITY OF PHILADELPHIA.

Civ. A. No. 81–616.

United States District Court,
E.D. Pennsylvania.

March 18, 1983.

Serena Dobson, Asst. U.S. Atty., Dale Belock, U.S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Ralph Teti, Philadelphia, Pa., for defendant.

MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This civil action was filed pursuant to § 2022 of the Vietnam Era Veteran's Reemployment Rights Act, 38 U.S.C. §§ 2021–2026 (hereinafter "the Act"). Plaintiff, Joseph F. Ryan, Jr., voluntarily resigned his position as a correctional officer in a prison operated by the City of Philadelphia and entered the Marine Corps. While serving in the Marine Corps, he incurred a service-oriented disability. After being honorably discharged from the Marine Corps, he reapplied for his former position. The parties agree that his disability disqualified him for reemployment as a correctional officer, unless the duties relating thereto were somewhat modified. The City acknowledges its obligation to offer Mr. Ryan employment in a position the duties of which he is qualified to perform and which would provide him with like "seniority, status and pay, or the nearest approximation thereof consistent with the circumstances in such person's case."

After considering the pleadings, stipulations of counsel, and the evidence produced at a nonjury trial, I conclude the positions

784

offered to Mr. Ryan were not of like status and pay or the nearest approximation thereof consistent with Mr. Ryan's circumstances. Accordingly, judgment will be entered in favor of Mr. Ryan and against the City in an amount which will compensate Mr. Ryan for loss of wages or benefits he would have received if offered an appropriate position. In accordance with Fed.R. Civ.P. 52(a), I make the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1. Plaintiff, Joseph F. Ryan, Jr., hereinafter plaintiff or Ryan, was initially employed by defendant, the City of Philadelphia, hereinafter the City, on November 3, 1971.

2. The City of Philadelphia is a municipal corporation authorized to conduct business in the Commonwealth of Pennsylvania and maintains an office in the Municipal Services Building, Room 630, Broad and Arch Streets, Philadelphia, Pennsylvania, within the jurisdiction of this Court, where it is engaged in the operation of city services including, but not limited to, the operation of municipal prisons and houses of correction and detention.

3. After working in another City Department, Mr. Ryan was appointed as a correctional officer on July 9, 1973. Ryan worked as a correctional officer at both Holmesburg Prison and the House of Corrections, two prison facilities operated by the City of Philadelphia.

4. Ryan worked satisfactorily in that position until he voluntarily resigned for the purpose of entering the Armed Forces of the United States of America (United States Marine Corps) effective May 27, 1976.

5. Plaintiff's position of employment with the City of Philadelphia, prior to his entry into the Armed Forces, was not a temporary position.

6. Plaintiff served in the United States Marine Corps from May 27, 1976 until January 7, 1980 when he was honorably discharged.

7. While in the military service, Ryan incurred a service-oriented disability. The disability which Ryan incurred during his military service has been diagnosed as temporal lobe epilepsy.

8. Due to this disability, Ryan became subject to post traumatic seizures (grand mal and psychomotor type).

9. At the time of his honorable discharge from the Marine Corps, Ryan was placed on the Temporary Disability Retirement List with an 80 percent disability rating.

10. Although the City suggests that plaintiff did not comply with its Civil Service Regulation 22.08 regarding military leave on enlisting in the service, it is clear that, by making timely application for restoration to employment on January 29, 1980, plaintiff complied with all federal statutory requirements and conditions for restoration to employment by defendant. The City did not immediately acknowledge plaintiff's right to be restored to employment.

11. On January 30, 1980, plaintiff requested assistance from the Labor Management Services Administration in effecting his veteran's reemployment rights.

12. On February 11, 1980, LMSA was advised by the City that Ryan's reemployment matter had been referred to its legal department for review.

13. On March 15, 1980, the plaintiff and representatives from LMSA met with representatives of the City. At that time, the parties agreed that, because of Ryan's disability, his prior job as a correctional officer was no longer appropriate.

14. On March 26, 1980, plaintiff was interviewed by the City for the position of trial listing clerk with the district attor-

1. Counsel for the parties entered into a comprehensive stipulation, and my findings include both the stipulated facts and facts found from the evidence produced. Neither party timely ordered the transcript of trial so that, at the time of this adjudication, a transcript is not available. Therefore, specific page references to the record cannot be made.

ney's office in the City of Philadelphia. That job was grade 11 and had a salary range of $14,133.00 to $15,531.00. Mr. Ryan understood, and I find, that the job was offered to him at a salary of approximately $12,000.00 per year. The job regularly required typing, which Mr. Ryan was not qualified to do. However, the City was willing to modify the typing requirement in order to accommodate plaintiff; this fact was communicated to Mr. Ryan. The trial listing clerk position with the typing requirement modified and at its approved salary range would have met the requirement of the statute as to like seniority, pay and status. However, inasmuch as the job was offered at a salary of $12,000, it was not of like pay and, thus, did not meet the statutory requirement.

15. On April 10, 1980, Ryan was interviewed for the position of fire equipment dispatcher trainee. The salary for this position was $12,042.00 per year, and Ryan's appointment to the position was contingent upon his passing a medical examination administered by the City's Medical Director. Ryan did not accept the offer of employment as a fire equipment dispatcher trainee with the Philadelphia Fire Department. The offer of this position by the City of Philadelphia was not the offer of a position with like pay, and plaintiff was not obligated to accept said position.

16. In July of 1980, Ryan was interviewed by Art Museum Director Larry Snyder for the position of museum technician which had a salary range of $13,384.00 to $14,565.00 per year. By Personnel Action Data Report, Director Snyder noted that (a) Mr. Ryan was a well-qualified civil service person available for museum technician and (b) by agreement with the Personnel Department, Mr. Ryan's salary would be that to which he was entitled due to his old position. Mr. Ryan communicated to the City that he would accept such a position, but the position was never offered because the City decided not to abolish a museum carpenter position in order to create a museum technician position.

17. On May 5, 1981, Ryan was interviewed by the City for a position as a security guard in Fairmount Park. The job was salaried at $12,110.00 per year, but was unsuitable for Mr. Ryan because of his epileptic condition. Also, the job was not of like pay.

18. On January 8, 1982, Ryan was interviewed for a position as an engineering aide at the Human Waste Treatment Plant operated by the City of Philadelphia. The job was salaried at approximately $12,000.00 per year. This job was unsuitable because of Mr. Ryan's epileptic condition and the potential hazards of toxic fumes and heavy machinery. Also, the job was not of like pay.

19. Defendant did not offer reemployment to plaintiff in any position of like status and pay at any time subsequent to his application for reemployment.

20. On March 4, 1982, the attorney for the plaintiff wrote a letter regarding this action to the attorney for the City. This letter stated:

This is to advise that as of February 23, 1982, Mr. Ryan has moved his residence to New Jersey. His correct address is:

404 Scott Avenue

North Cape May, New Jersey 08204

Obviously, this means that his claim for employment with the City of Philadelphia will be withdrawn. However, his back pay claim for the period of time that he was a resident of the City is still viable.

21. Based on his pre-military City service, credit for military service, and the time subsequent to his application for reemployment with the City, as of February 23, 1982, Ryan was entitled to seniority and its corresponding emoluments within the City's employment structure totalling 10 years, 4 months and 20 days.

22. When plaintiff left the City and entered the military, he was at salary range 12, step 3 for a correctional officer. His annual salary was $12,286.00. As of January 1980, when plaintiff applied for reemployment, the salary of a range 12, step 1 correctional officer was $14,614.00, and that

of a range 12, step 4 officer was $15,964.00. As of July 1, 1981, the salary for a range 12, step 1 correctional officer was $16,075.00, and that of a range 12, step 4 officer was $17,560.00. If Ryan had remained a correctional officer and had made normal progress as reflected by his past employment history with the City of Philadelphia, as of the date of application for reemployment, January 29, 1980, he would have been salaried at range 12, step 4. Because the City failed to comply with the Act and to offer plaintiff reemployment in a position with like seniority, status and pay, plaintiff is entitled to recover the salary benefits lost, including any fringe benefits lost, from January 30, 1980 to February 23, 1982, the effective date of the withdrawal of his claim due to his change of residence to New Jersey. The total loss of back wages for which plaintiff is entitled to be compensated is $34,199.60.

23. The City was in violation of the Act as to reemployment of Mr. Ryan until February 23, 1982 and continues to be in default as to compensation for wage loss. Plaintiff is entitled not only to back wages but also to interest at 6 per cent per annum from the date each wage payment became due or, in accordance with the unopposed suggestion of plaintiff, from the median date of the violation; the median is 18 months and 25 days. Total interest awarded is $3,092.00.

24. The wage loss compensation of $34,199.60 set forth in paragraph 22 together with the interest adjustment awarded in paragraph 23 fully compensates Mr. Ryan for every day Mr. Ryan was not reemployed. Since said award compensates plaintiff for every day of the period, even though he did not work, there is no evidence of record to justify awarding him the additional compensation he claims for sick days, vacation pay, or holiday pay. Also, his claim for reimbursement for medical expenses he paid over and above V.A. insurance coverage is rejected because there is

no evidence that, as a city employee, he would have had 100 per cent insurance coverage as claimed.

## DISCUSSION

■ Although the City asserts that plaintiff did not follow its Civil Service Regulations regarding leave of absence to enter the military, it does not vigorously contend that this fact relieves it of its obligation under the Act to reemploy a disabled veteran in a position of like seniority, status and pay. The City forcefully claims that it met its obligation by offering employment to the veteran as a trial listing clerk, fire equipment dispatcher trainee, Fairmount Park security guard and engineering aide. The Act does not require placement in an identical position, and plaintiff does not dispute that some of the positions offered were comparable in status and identical in seniority. While the Act does not require identical pay, it does require like pay; thus, it clearly contemplates only a minimal difference in salary. Here, employment was offered in a pay range which approximated only 80 per cent of the pay Ryan would have received as a correctional officer.[2]

I note the City's claim that it offered the job of trial listing aide to Ryan at a salary in excess of $14,000.00 per year. Such an offer would have sufficiently approximated the salary Ryan would have earned as a correctional officer and thus would have complied with the Act. However, the evidence as to the offer is conflicting. Ryan insists that the position was discussed only at a $12,000.00 salary range. The only other person with personal knowledge of the matter, Anthony J. Riley, an administrator in the District Attorney's office, was vague in his recollection of the conversation, and could not say with certainty that he had offered the job at a salary in excess of $12,000.00. I accept the testimony of Mr. Ryan on this issue and find that the job was not offered at the higher salary range.

2. All of the jobs offered were in the $12,000.00 salary range. Plaintiff was entitled to reemployment at salary range 12, step 4, at an annual salary of $15,964.00 at all relevant times prior to July 1, 1981, and a salary of $17,560.00 after July 1, 1981.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties in this cause of action pursuant to § 2022 of the Veteran's Reemployment Rights Act, 38 U.S.C. § 2022.

2. Plaintiff was not required to accept any of the positions offered by the City because none of the positions approximated the correctional officer position in pay.

3. The City violated the Act by not placing the plaintiff in a position of like seniority, status and pay or the nearest approximation thereof consistent with the circumstances in his case.

4. Ryan was not required to accept any of the lower paying positions offered in order to mitigate damages.

5. Plaintiff is entitled to an award of back pay in the amount of $34,199.60, plus prejudgment interest at 6 per cent calculated from the median point of violation, in the amount of $3,092.00, for a total award of $37,291.60.