ACCEPTED
15-24-00089-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/16/2024 2:39 PM
CHRISTOPHER A. PRINE
CLERK

CAUSE NO. 15-24-00089-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/16/2024 2:39:04 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
# FOR THE FIFTEENTH JUDICIAL DISTRICT
# AUSTIN, TEXAS

## TEXAS DEPARTMENT OF PUBLIC SAFETY,
*Appellant,*

**v.**

## LE ROY TORRES,
*Appellee.*

On Appeal from the
County Court at Law Number One, Nueces County
No. 2017-CCV-61016-1

## APPELLEE'S BRIEF

Stephen J. Chapman
State Bar No. 24001870
**WEBB, CASON &MANNING, P.C.**
710 N. Mesquite, 2nd Floor
Corpus Christi, Texas 78401
Telephone: (361) 887-1031
Facsimile: (361) 887-0903
steve@wcctxlaw.com

Brian J. Lawler
*Pro Hac Vice*
**PILOT LAW, P.C.**
4632 Mt. Gaywas Drive
San Diego, California 92117
Telephone: (619) 255-2398
Facsimile: (619) 231-4984
blawler@pilotlawcorp.com

Attorneys for Appellee

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...............................................vi

ISSUES PRESENTED.......................................................................... vii

I.    SUMMARY OF THE ARGUMENT.................................................1

II.   STATEMENT OF FACTS...........................................................1

III.  ARGUMENT ................................................................................6

    A.  USERRA GOVERNS SERVICE MEMBERS'
       RE-EMPLOYMENT RIGHTS ................................................6

       1.  The Trial Court Did Not Err Because the Jury Was Properly
       Instructed On Plaintiff's Reemployment Accommodation Claim Under
       Section 4313 .......................................................................7

       2.  There is No Claim Preclusion and TXDPS Failed To Make Any
       Reasonable Efforts For Accommodation...................................10

           a.     USERRA Section 4313 Reemployment and
                Accommodation.................................................11

               1.    *TXDPS Failed to Make Reasonable Efforts to
                     Reintegrate Captain Torres into his Civilian
                     Career*.......................................................13

       3. The Trial Court Did Not Err Because the Evidence Supported
        The Jury Verdict and Plaintiff Is Entitled To An Award Of
        Attorneys' Fees ...............................................................21

           a.     Captain Torres is Entitled to an Award of His Attorneys'
                Fees Under USERRA .......................................21

           b.     Captain Torres Was Entitled to the Damages Awarded in
                 Accordance With USERRA.................................23

           c.     TXDPS States no Basis for a Remittitur.........................27

PRAYER.................................................................................28

CERTIFICATE OF COMPLIANCE.....................................................................29

CERTIFICATE OF SERVICE ..........................................................................30

# INDEX OF AUTHORITIES

**Cases**

*Boone v. Lightner*, 319 U.S. 561 (1943) .................................................................. 7

*Bradberry v. Jefferson County*, 732 F.3d 540 (5th Cir. 2013) ................................. 9

*EEOC v. LHC Grp., Inc.*, 773 F.3d 688 (5th Cir. 2014) .................................. 16, 19

*Fink v. City of New York*, 129 F. Supp. 2d 511, 523 (E.D.N.Y. 2011) .........14

*Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275 (1946) ..................... 7

*Fryer v. A.S.A.P. Fire Safety Corp.*, 750 F. Supp. 2d 331 (D. Mass 2010) .......... 22

*Georgia v. City of Bridgeport,* U.S. Dist. LEXIS 142506 (D.Conn. Aug. 10, 2020) .........................................................................................................................17

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) .......................... 7

*Hembree v. Georgia Power Co.*, 637 F.2d 423 (5th Cir. 1981) .................... 25, 26

*King v. St. Vincent's Hosp.*, 502 U.S. 215 (1991) ................................................... 7

*Le Maistre v. Leffers*, 333 U.S. 1 (1948) ............................................................... 7

*Lett v. SEPTA* 2021 U.S. Dist. LEXIS 227296 (E.D.Pa. Nov. 26, 2021) .....17

*Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018) .................................... 9

*Mathis v. Exxon Corp.* 302 F.3d 448, 461 (5th Cir. 2002) ....................................22

*Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 629-30 (8th Cir. 1995) .......................16

*Moten v. Maverick Transp., LLC* 2015, U.S. Dist. LEXIS 147158 (N.D.Ala. Oct. 30, 2015) ......................................................................................................14

*Paxton v. City of Montebello*, 712 F. Supp.2d 1017 (C.D. Cal. 2010) .........14

*Powers v. USF Holland Inc.*, 2015 U.S. Dist. LEXIS 82324 (N.D.Ind. June 25, 2015) .......................................................................................................................17

*Pope v. Moore,* 711 S.W.2d 622, 624 (Tex. 1986) ...............................................27

*Punt v. Kelly Servs*. 862 F.3d 1040, 1048 (10th Cir. 2017) .................................. 10

*Ryan v. City of Philadelphia*, 559 F.Supp. 783 (3rd Cir. 1984)) ...................25

*Spurling v. C&M Fine Pack, Inc*., 739 F.3d 1055, 1062 (7th Cir. 2014) .....16

*Taylor v. Phoenixville School Dist*., 184 F.3d 296 (3d Cir. 1999) ...................... 15

*Taylor v. Principal Fin. Group, Inc*., 93 F.3d 155, 165 (5th Cir. 1996) .......16

*Torres v. Texas Dept. of Public Safety*, 597 U.S. 580 (2022) ............................... 21

*United States v. Nevada*, 817 F. Supp.2d 1230, 1234 (D. Nev. 2011) ..................14

**Statutes**

38 U.S.C. § 4301 (a)(1) ............................................................... 6, 7, 12

38 U.S.C. § 4302 ...........................................................................22

38 U.S.C. § 4303 ...........................................................................12

38 U.S.C. § 4304 ...........................................................................12

38 U.S.C. § 4311 ......................................................................... 7, 8

38 U.S.C. § 4312 (a)(1),(c), (e) ......................................................... 12

38 U.S.C. § 4313 .............................................. 8, 9, 11, 12, 13, 15, 23, 24, 25, 27

38 U.S.C. § 4323 ............................................................................ 21

42 U.S.C. § 12101...........................................................................  15

**Regulations**

20 C.F.R. § 1002.5(i)....................................................................... 14

20 C.F.R. § 1002.33 ......................................................................... 9

20 C.F.R. § 1002.37 ......................................................................... 14

20 C.F.R. § 1002.115 ........................................................................ 12

20 C.F.R. § 1002.181 ........................................................................12

20 C.F.R. § 1002.191 ........................................................................24

20 C.F.R. § 1002.198 .............................................................. 15, 16, 17

20 C.F.R. § 1002.225 ................................................................... 13, 25

20 C.F.R. § 1002.226 ......................................................................... 8

20 C.F.R. § 1630 ...................................................................... 15, 16, 17

## Additional Authorities

70 Fed. Reg. 75246 (Dec. 19, 2005) ..................................... 9, 10, 12, 25

H.R. Rep. No. 103-65, pt. 1 (1993) ........................................... 7, 25, 26

1994 U.S.C.C.A.N. 2449, 2456 ................................................ 7, 25, 26

EEOC, "Veterans and the Americans with Disabilities Act: A Guide for Employers" (2020) ..................................................................................... 28

U.S. Equal Employment Opportunity Commission. (2020, November 27) Veterans and the Americans with Disabilities Act: A Guide for Employers. Retrieved from https://www.eeoc.gov/laws/guidance/veterans-and-americans-disabilities-act-guide-employers. ..................................................15

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should be permitted in this matter because the determination of the issues here will affect Reserve Personnel in the Country's armed forces, and the Court's resolution of this appeal will potentially have wide-ranging impact even beyond the State of Texas.

## ISSUES PRESENTED

1. **THE TRIAL COURT DID NOT ERR BECAUSE THE JURY WAS PROPERLY INSTRUCTED ON PLAINTIFF'S REEMPLOYMENT ACCOMMODATION CLAIM UNDER USERRA SECTION 4313**

2. **THERE IS NO "CLAIM PRECLUSION" AND TXDPS FAILED TO MAKE ANY REASONABLE EFFORTS FOR ACCOMODATION**

3. **THE TRIAL COURT DID NOT ERR BECAUSE THE EVIDENCE SUPPORTED THE JURY VERDICT AND PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES**

# I.

## SUMMARY OF THE ARGUMENT

Plaintiff/Appellee Captain Le Roy Torres was an Army reservist who was called to active duty and deployed to Iraq. While there, he suffered lung damage from toxic fumes. When Captain Torres returned to his civilian life and resumed his duties as a State Trooper – the job he held before being called to active duty, his latent exposure injuries began to worsen and prevented him from performing all the duties of his position. Captain Torres needed and requested an accommodation from the Texas Department of Public Safety ("TXDPS"). Rather than accommodating him, his request was essentially ignored until he was left with no choice but to resign. The clear evidence in this case shows the TXDPS violated the USERRA Section 4313 accommodation requirements, and the jury found liability and damages supported by the evidence presented. The Trial Court did not err in any manner regarding this case and TXDPS' appeal should be denied.

# II.

## STATEMENT OF FACTS

Le Roy Torres began his tenure with TXDPS as a state trooper in 1998. (RR-4, pp. 33-36.) By 1999, he had successfully completed the academy. For nearly a decade, he served honorably and without incident. His service was interrupted by his deployment to Iraq in 2007. (RR-4, pp. 33-36.) Upon his return from Iraq in

2008, TXDPS reemployed him, as it was lawfully required to, and acknowledged his commendable service. (RR-4, pp. 33-36, 75-76)

In November 2010, Captain Torres was diagnosed with a severe health condition because of his deployment. This diagnosis stemmed from an August 2010 appointment with Dr. Miller. (RR-4, pp. 40-46.) After Captain Torres was officially diagnosed with constructive bronchiolitis, he submitted several HR-87 forms to TXDPS to secure a job position which would accommodate his permanent disability. (RR-4, pp. 40-46.)

An HR-87 is an evaluative medical status report form that TXDPS provides to its employees when they request a workplace accommodation. (RR-4, pp. 44-47) The employee must have this form filled out by a physician. As a result of those HR-87 forms indicating that Captain Torres was suffering from a permanent service-related illness, and aware of his own physical limitations which would preclude him from continuing the arduous duties of a front-line state trooper, Captain Torres requested accommodation on January 10, 2011. (RR-4, pp. 44-47. RR-12 Exh. 118))

However, the response from TXDPS was a strange series of conflicting communications. On January 10, 2011, the same day as his accommodation request, he met with his supervisor Captain Lawson. At that meeting Captain Torres was given a memo indicating that TXDPS acknowledged his permanent

disability. (RR-4, pp. 47-50. RR-11 Exh. 10) Yet two days later, on January 12, 2011, in another meeting with Captain Lawson, TXDPS retracted the acknowledgment of his permanent disability. (RR-4, pp. 49-51. RR-11 Exh. 11) There is no explanation in the evidence or testimony as to why this was done. This confusion was then compounded by a subsequent memo on January 27, 2011, which offered Captain Torres a temporary "modified duty" position at his Trooper III rank and pay scale. (RR-4, pp. 51-54. RR-11 Exh. 12) After that memo, no one at TXDPS ever again contacted Captain Torres regarding the status of his accommodation request. (RR-6 p.75-78)

After not getting any answers regarding the status of his request for a permanent accommodation, on October 25, 2011, Captain Torres again formally requested a reasonable accommodation and asked for a transfer to the driver's license office in Corpus Christi. (RR-4, pp. 60-63. RR-11 Exh. 14) Captain Torres could perform the essential functions of that position and had done so prior to this formal request. He was also prepared to take any position with TXDPS that could accommodate him. (RR-4 pp. 53, 131-132 RR-5 pp. 10-11) Notably, he had been working there already through a temporary modified duty transfer, but there is no documentation from DPS anywhere in the record to commemorate this.

On the same day as his second request, Captain Lawson approved Captain Torres' request and recommended to her supervisor that he be transferred from his

current position. (RR-11 Exh. 3) There was no further action on Captain Torres' request until December 16, 2011, when an internal TXDPS HR e-mail indicated that the processing of Captain Torres' request for an accommodation transfer **was "on hold until we are able to review what has transpired."** (RR-11 Exh. 5)(emphasis added) Notably, and at the heart of Captain Torres' claims, TXDPS took no further action or communication regarding his accommodation request after this date. (other than a December 20, 2011, interoffice memorandum about a modified duty extension, that again acknowledged his "disability is permanent.") (RR-11 Exh. 6.) There was no response to this memo or any action taken at all by TXDPS.

Captain Torres' temporary "modified duty" position at the driver's license office continued until around April 2012 at which point he took an extended medical leave. His health conditions worsened, and his concerns grew, leading him to enroll in a medical program in Utah in late July 2012. (RR-4, pp. 57-58, 63-65). During this period, the only communication he had was with his direct supervisor, Sgt. Benavides, who had no information to share regarding his accommodation request. (RR-4, p. 68)

By August 2012, Captain Torres had received no information from anyone at DPS about his accommodation request and began to realize there was not going to be a response. His family was in grave financial condition and with no

accommodation information forthcoming from TXDPS, in desperation Captain Torres informed TXDPS of his intent to medically retire. (RR-4, pp. 69-75, RR-12 Exh 84, 116)

This medical retirement request was rejected by the Texas Employees Retirement System ("ERS"), who ironically stated "[a]fter reviewing your medical records, the Medical Board concluded that you could perform the duties of another occupation, such as sedentary work that does not require physical exertion or exposure to toxic fumes or chemicals." (RR-11, Exh 85.) The entire reason Captain Torres was forced into this untenable situation was TXDPS' failure to place him in the sedentary work position at the Driver's License office (or anywhere else) he requested as accommodation. At this point Captain Lawson, through Sgt. Benavides, advised him to change his medical retirement to a standard resignation, effective August 31, 2012. (RR-4, pp. 71-72, RR-12 Exh 116) Out of options, Captain Torres complied with their direction and his career was over.

When asked at trial what reasonable efforts TXDPS made and/or communicated to Captain Torres about his request between the request until his resignation, the TXDPS representative Major Palmer testified he (meaning TXDPS) did not know what happened because there is nothing in the record about any action and that there was no evidence anyone ever contacted Captain Torres. (RR-6 p.75-78) Major Palmer also testified that there were numerous regions that

Appellees Brief Page - 5 -

could have positions available to Captain Torres but did not know if TXDPS had even bothered to look. (RR-6 p. 76-77) Finally, he also made clear that after the December 16, 2011, HR email stating things were "on hold" there was nothing else in the TXDPS records to show anything at all was done. (RR-6 p.79, RR-11 Exh. 5) It is clear the TXDPS' numerous admitted failures prevented Captain Torres from being placed in a job that accommodated his permanent disability, even though such jobs were readily available.

## III.
## ARGUMENT

### A. USERRA GOVERNS SERVICE MEMBERS' RE-EMPLOYMENT RIGHTS

The Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 *et seq.*, provides many rights for both Reserve and National Guard military members who leave their employment due to military service. A primary purpose of USERRA is "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." (38 U.S.C. § 4301(a)(1))

USERRA serves as the foundational statute protecting the employment rights of military service members. It is designed to ensure service members are not disadvantaged or discriminated against in their civilian careers due to their

Appellees Brief Page - 6 -

service, and they are promptly reemployed upon their return. (38 U.S.C. § 4301) USERRA and its predecessor statutes must broadly and liberally be interpreted in favor of servicemembers, as intended by the legislators who enacted it, and the United States Supreme Court and numerous lower courts have long echoed this strong policy favoring servicemembers. (H.R.Rep, No. 103-65 at 23 (1993), *reprinted in* 1994 U.S.C.C.A.N. 2449, 2456 ("The Committee intends that these anti-discrimination provisions be broadly construed and strictly enforced")); *Henderson ex rel. Henderson* v. *Shinseki*, 562 U.S. 428, 441 (2011) ("[P]rovisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.") (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220, n.9 (1991)); *Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948) (The law "must be read with an eye friendly to those who dropped their affairs to answer their country's call."); *Fishgold v. Sullivan Drydock & Repair Corp*, 328 U.S. 275, 285 (1946) ("This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need."); *Boone v. Lightner*, 319 U.S. 561, 575 (1943).)

1. **THE TRIAL COURT DID NOT ERR BECAUSE THE JURY WAS PROPERLY INSTRUCTED ON PLAINTIFF'S REEMPLOYMENT ACCOMMODATION CLAIM UNDER USERRA SECTION 4313**

Defendant's issues 1, 2, 3 and 4 are interrelated as they all rely on their incorrect argument that this claim arises solely under USERRA Section 4311.

Section 4311, among other things, prevents an employer from discriminating because of an employee's military service and has affirmative defenses to such discrimination claims for the employer. However, Plaintiff abandoned his Section 4311 claims and his claims at trial proceeded under Section 4313, which governs re-employment and accommodation for any service-related illness/disability and contains different affirmative defenses.[1] Simply stated, although they rehired Captain Torres in his original trooper position, as it was obligated to do, when his disability manifested itself later TXDPS was also required under USERRA Section 4313 to accommodate his disability, but it did not. As explained at the charge conference by Plaintiff's attorney Lawler:

> "So when the statute was enacted in 1994, Congress charged the Department of Labor with promulgating the regulations to explain in plain language what they meant, what the statute meant, and the Department of Labor did that. That's at 20 CFR, Section 1002. And then what 1002.226 establishes that, 'The employer must make reasonable accommodations for any disability incurred in or aggravated during a period of service.' No one disputes that. 'The accommodation requirement is not limited to disabilities incurred during training or combat so long as they are incurred during the period of service.' No dispute there. 'The disability must have been incurred or aggravated when the servicemember applies for reemployment even if it has not yet been detected. If the disability is discovered after the servicemember resumes work,' like Mr. Torres, 'and it interferes with his or her job performance,' like Torres, 'then the reinstatement process should be restarted under USERRA's disability provisions.' That is 20 CFR 1002.226, That is 20 CFR 1002.226, and that explanation I just read for the Court can be found

---

[1] In fact, during the Jury Charge Conference, Counsel for Plaintiff added the 4313 affirmative defense "undue hardship" but its inclusion was objected to/declined by Defendants. (RR-6 pp. 111-112,119)

as we cite underneath No. 2 at 70 Fed.Reg. 75246, specifically 75277 (December 19, 2005)"

(RR-V6, pg. 96)

Moreover, proving discriminatory intent or motive in a USERRA Section 4313 reemployment/failure to accommodate case is simply not required. This was pointed out numerous times during the trial and charge conference. (RR-6, pp. 11 L13-25, 12 L9-15, 13 L5-13, 16, L8-25, 17 L1-13, 24 L 7-13, 25 L9-19, 96, 100, 105-106, 107-112) As the trial court succinctly illustrated at the charge conference:

> 25.    if they're taking the
> 1.    position that they're not going to seek recovery under
> 2.    4311 and they're only going to try to seek recovery
> 3.    under 4313, then why do we put anything in there about
> 4.    4311?

(RR-6, pp. 107 L25 - 108 L1-4)

As the law clearly states, an "employee is not required to prove that the employer discriminated against him or her because of the employee's uniformed service in order to be eligible for reemployment." (20 C.F.R. § 1002.33; *Bradberry v. Jefferson County* 732 F.3d 540, 552 (5th Cir. 2013); *Lincoln v. BNSF Ry. Co.* 900 F.3d 1166, 1204 (10th Cir. 2018) ["Because 'any failure to provide reasonable accommodations for a disability is necessarily because of disability,' it follows that a plaintiff need not prove the employer's motivation or intent to discriminate to

prevail on a failure to accommodate claim."], quoting *Punt v. Kelly Servs*., 862 F.3d 1040, 1048 (10th Cir. 2017).)

As is clearly required by the Department of Labor's final rules on USERRA from 2005:

> Section 1002.226 establishes that the employer must make reasonable accommodations for any disability incurred in or aggravated during a period of service. The accommodation requirement is not limited to disabilities incurred during training or combat, so long as they are incurred during the period of service. If the disability is discovered after the servicemember resumes work, and it interferes with his or her job performance, then the reinstatement process should be restarted under USERRA's disability provisions.

70 Fed. Reg 75246, 75277, (December 19th, 2005).

USERRA required TXDPS to make reasonable efforts to accommodate Captain Torres <u>when his disability manifested itself</u> after his re-employment and it did not. As was testified to by TXDPS Lieutenant Jankowski "It was my opinion that when I transferred to Corpus Christi after -- and I was handed a thick packet, I felt like he was set up for failure by the agency because of the -- what I believe to be a lack of HR involvement from the beginning." (RR-5, p. 51 L8-12) As is explained further below, the TXDPS' "setup for failure" resulted in the lack of any interactive process at all for accommodating Captain Torres.

## 2. THERE IS NO "CLAIM PRECLUSION" AND TXDPS FAILED TO MAKE ANY REASONABLE EFFORTS FOR ACCOMODATION

TXDPS argues that Captain Torres' ultimate resignation was what caused the breakdown of the required "interactive process" under USERRA and somehow this results in "claim preclusion." This argument is both factually and syntactically incorrect. The facts in this case show that there was no interactive process at all and that Captain Torres, after nearly ten months of radio silence from his leadership, and with no hope of receiving any accommodation, was advised to resign and did so.

a.  USERRA Section 4313 Reemployment and Accommodation

Service members who leave their civilian employment to serve in the military have a fundamental right to be fully reintegrated into jobs upon completing their service. USERRA sub-sections 4313(a)(1)(A) and (B) provide, specific to the benefit of reemployment, "…a person is entitled to reemployment…[and] shall be promptly reemployed in a position of employment in which the person would have been employed if the continuous employment of such a person with the employer had not been interrupted by such service…[including] status and pay…" or "in the position of employment in which the person was employed on the date of the commencement of the service in uniformed services…." That means returning service members are reemployed in a position that reflects the trajectory their career would have taken had they not been absent for military service.

This could mean a promotion, a raise, or other job benefits that the servicemember would have attained with reasonable certainty if not for the absence due to military service. (*See* 38 U.S.C. § 4313.) To be eligible for these reemployment rights, a servicemember must meet certain criteria:

1.  The individual left a civilian job to perform uniformed service. (38 U.S.C. § 4301)
2.  The employer was given prior notice by the individual before they left for the uniformed service. (38 U.S.C. § 4312(a)(1))
3.  The total period of the uniformed service was not more than five years (subject to some exceptions) (38 U.S.C. § 4312(c))
4.  The individual applied for reemployment in a timely manner after the conclusion of their service. (38 U.S.C. § 4312(e); 20 C.F.R. Part 1002)
5.  The individual was not separated from the service with a disqualifying discharge or under other than honorable conditions. (38 U.S.C. § 4304)

Captain Torres' eligibility for reemployment is undisputed in this case. It is also undisputed that Captain Torres' progressive service-related disability left him unable to perform the duties of a Texas State Trooper after he was reemployed. However, he was able to perform the essential duties of the Driver's License accommodation position he requested as well as many others in the TXDPS regions throughout the State.[2] (RR-4 pp. 53, 131-132 RR-5 pp. 10-11) Once a service member like Captain Torres' service-related disability arises after re-employment, but prevents them from performing the essential functions of their

---

[2] Captain Torres' employer was the State of Texas. Within the vast network of the Texas government, there were positions for which Captain Torres was qualified or could become qualified through training -- even if it means displacing another employee. (38 U.S.C. § 4312(e)(1)(A); 20 C.F.R. §§ 1002.115(a) and 1002.181.) USERRA does not limit reemployment opportunities to vacant positions, expanding the range of reemployment options. (70 Fed. Reg. 75,246, 75,277 (Dec. 19, 2005), available at 70 FR 75246-01, at *75277.)

position, USERRA Section 4313 requires TXDPS to make reasonable efforts for his accommodation. As is explained below it failed to do so.

1. *TXDPS Failed to Make Reasonable Efforts to Reintegrate Captain Torres into his Civilian Career*

There are instances where reemploying the service member in their original or escalator position might not be feasible, especially if the service member has incurred a disability during their service. In such cases, employers must make "reasonable efforts" to accommodate the service member's disability and appropriately reemploy them in a suitable position of equivalent seniority, status, and pay, the duties of which they are qualified to perform or could become qualified to perform with reasonable efforts by the employer. (38 U.S.C. § 4313(a)(4).

"A disabled service member is entitled, to the same extent as any other individual, to the escalator position he or she would have attained but for uniformed service. If the employee has a disability incurred in, or aggravated during, the period of service in the uniformed services, the employer must make reasonable efforts to accommodate that disability and to help the employee become qualified to perform the duties of his or her reemployment position." (20 C.F.R. § 1002.225.)

"The term 'reasonable efforts' … means actions, including training provided by an employer, that do not place an undue hardship on the employer." (38 USC § 4303(10); 20 C.F.R. § 1002.5(i).) In the context of USERRA, the term "employer" is expansively defined to encompass "any person, institution, organization, or other entity that pays salary or wages for work performed or has control over employment opportunities," including a "State" and potentially extending to more than one entity for a single employee. (38 U.S.C. § 4303(4)(A)(iii); 38 U.S.C. § 4303(14); 20 C.F.R. § 1002.37.) This broad interpretation is affirmed in *United States v. Nevada,* where the court emphasized that the "employer" of a state employee is not confined to the specific department of employment but extends to the state itself, acting through its designated agents with the authority in employment matters. (*United States v. Nevada*, 817 F.Supp.2d 1230, 1234 (D.Nev. 2011).)

There is a relative "dearth of cases" on the duty to make "reasonable efforts" under USERRA, making it appropriate to gather interpretive guidance from similar federal law. (*See Moten v. Maverick Transp., LLC* (N.D.Ala. Oct. 30, 2015) 2015, U.S.Dist.LEXIS 147158 [relying on Title VII for guidance on USERRA]; *Paxton v. City of Montebello*, 712 F. Supp.2d 1017 (C.D. Cal. 2010) [relying on the ADEA for guidance on USERRA]; *Fink v. City of New York*, 129 F. Supp. 2d 511, 523 (E.D.N.Y. 2011) [relying on the ADEA for guidance on USERRA].)

Appellees Brief Page - 14 -

For Section 4313, that law is the Americans with Disabilities Act ("ADA") (*See, e.g.*, U.S. Equal Employment Opportunity Commission. (2020, November 27) Veterans and the Americans with Disabilities Act: A Guide for Employers. Retrieved from https://www.eeoc.gov/laws/guidance/veterans-and-americans-disabilities-act-guide-employers.) The ADA, USERRA, and interpretive regulations for both, differentiate between essential and non-essential job duties when considering accommodations for disabled employees, absent "undue hardship." (*See, e.g.*, 38 U.S.C. § 4313 (USERRA); 42 U.S.C. § 12101, *et seq.* (ADA); 20 C.F.R. §§ 1002.5(i) and 1002.198 (USERRA); 20 C.F.R. § 1630 App. 1630.9 (ADA).)

The counterpart to USERRA's "reasonable efforts" is the ADA's "interactive process." The similarities between the two concepts make them almost interchangeable. "Once a qualified individual with a disability has requested provision of reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." (29 C.F.R. Pt. 1630, App. § 1630.9; *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (emphasis added.)

Appellees Brief Page - 15 -

However, USERRA's "reasonable efforts" and the ADA's "interactive process" do differ in a material way: communication under the ADA may not necessarily be required, **whereas it most certainly is under USERRA**. Specifically, courts have held that an employer's failure to engage in this process, by itself, might not expose them to liability under the ADA. However, if the failure to engage prevents the identification of an appropriate accommodation for a qualified individual, it becomes actionable. (*Taylor v. Principal Fin. Group, Inc*., 93 F.3d 155, 165 (5th Cir. 1996); *Spurling v. C&M Fine Pack, Inc*., 739 F.3d 1055, 1062 (7th Cir. 2014); *Miller v. Nat'l Cas. Co*., 61 F.3d 627, 629-30 (8th Cir. 1995).) By contrast, "reasonable efforts" are an integral and required part of reemploying service members who return disabled, naturally giving rise to stand-alone liability for the failure to engage in such efforts. (*See* 20 C.F.R. § 1002.198(b) ["reasonable efforts must be made"].)

Communication is a cornerstone of providing disability accommodations. When an employee with a disability requests a reasonable accommodation, the employer must communicate in a flexible, interactive discussion to determine the most suitable accommodation. (*EEOC v. LHC Grp., Inc.,* 773 F.3d 688, 697 (5th Cir. 2014).) It is a problem-solving approach, where both parties collaboratively identify barriers and potential solutions. (29 C.F.R. § 1630.9, appendix.) While the employee might have insights into potential accommodations, the employer, with

its broader perspective on workplace operations, might identify alternative solutions that are equally effective. (§ 1630.9, app.) In some cases, the disability and the type of accommodation required are evident, minimizing the need for extensive discussions. (§ 1630.9, app.) In other situations, the employer might need more information about the disability or the challenges it poses in the workplace. (§ 1630.9, app.)

Adequate communication is a necessary and required part of reemploying a disabled service member in accordance with USERRA (*See* 20 C.F.R. § 1002.198(b) ["reasonable efforts must be made"].); and it is a crucial step to avoid confusion and misunderstandings. (*Lett v. SEPTA* (E.D.Pa. Nov. 26, 2021) 2021 U.S.Dist.LEXIS 227296, at FN. 14 ["had SEPTA engaged in the interactive process, it likely could have cleared up Lett's confusion...."]; *Powers v. USF Holland Inc.* (N.D.Ind. June 25, 2015) 2015 U.S.Dist.LEXIS 82324 ["This failure to follow-up could be inferred on summary judgment as having caused the breakdown in the interactive process (again, whether or not the initial documents were actually confusing)"]; *Georgia v. City of Bridgeport* (D.Conn. Aug. 10, 2020) 2020 U.S.Dist.LEXIS 142506 ["While it is true Defendant did not understand why transfer was a reasonable accommodation, it did not understand because it failed to engage in the interactive process by failing to explain the basis of its confusion to

Plaintiff's physician or to request further information from Plaintiff, though she offered to provide it."].)

Effective communication is not just a courtesy—it is a legal obligation, especially when it comes to accommodating disabled veterans under USERRA. The interactive dialogue between an employer and an employee is designed to be a collaborative process, where both parties work together to identify potential barriers and solutions. This dialogue is not just about ticking boxes; it has real-world implications for employees like Captain Torres. It simply did not happen in this case.

TXDPS claims without supporting evidence to have followed an "interactive process" for Captain Torres that was only ended by his resignation. However, the evidence here shows there was no process at all. The TXDPS Representative at trial, Major Palmer, instead testified there is nothing to show any action was taken regarding his October request and that no one contacted Captain Torres at all:

> Q. (by Mr. Lawler) I'm sorry, sir. I didn't mean to interrupt
> you. You are aware that Mr. Torres made an
> accommodation request on January 10th, 2011?
> A. Yes.
> Q. Okay. And then he made another one on
> October 25th, 2011?
> A. Yes.
> Q. Okay. Let's talk about the second one, the
> one -- the October 25th memo. Let's just call it that.
> A. Yes, sir.
> Q. Major -- then Captain -- Lawson on October

25th sent a memo to Major Lopez recommending that
transfer that Mr. Torres requested to driver's license
office; isn't that correct?
A. Yes.
Q. Then what happened with the process? It went
at some point to HR, didn't it, his request?
A. It's not clear. It's not clear in the record
where that memo went.
Q. It's not clear. That's the point. Do you
know where it went?
A. I do not.
Q. Do you know what action was taken on it?
A. I do not, not that memo.
Q. Who from DPS ever told Mr. Torres what was
happening with that request?
A. The record doesn't make that clear.
Q. The answer is no one, isn't it?

****

Q. (By Mr. Lawler) The answer is no one, isn't
it?
A. To my knowledge.
Q. To your knowledge, no one contacted
Mr. Torres?
A.     To my knowledge, no one.

****

Q. (by Mr. Lawler) Between October 25th, the memo, 2011 and
August 6th, 2012, who, if anyone, from DPS contacted
Mr. Torres about the status of his permanent
accommodation request?
A.I don't recall anything in the record.

(RR-6 p.75, 78)

The interactive process, as emphasized in cases like *EEOC v. LHC Grp*., Inc.

(supra) is not a mere formality. It is crucial when dealing with service members

returning from deployment, as they may have unique needs and challenges that require more specific understanding of the employee's issues that require the accommodation. Here, TXDPS plainly admitted through its representative that nothing at all was actually done in regard to this request.

Captain Torres's experience with TXDPS paints a picture of a systemic breakdown in this essential process. The internal HR memo on December 16, 2011, (RR-11 Exh. 5) serves as a stark reminder of this breakdown. Quite simply, after Captain Torres requested a reasonable accommodation and Captain Lawson approved it and forwarded it up her chain of command, TXDPS took no further action to facilitate Captain Torres' accommodation request. Everything, instead, remained "on hold."

Furthermore, the instruction Captain Lawson and Sgt. Benavides gave to Captain Torres advising him to resign further underscores TXDPS' communication failures and the jury's answers in this case. (RR-4, pp. 71-72, RR-12 Exh 116) This advice, combined with the nearly ten-month long complete failure in TXDPS' "interactive process" for Captain Torres's transfer and accommodation, left him devoid of options. He unfortunately had no alternative but to resign a position he intended to keep for 30 years. (RR-4 p.65-66)

**3. THE TRIAL COURT DID NOT ERR BECAUSE THE EVIDENCE SUPPORTED THE JURY VERDICT AND PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES**

With the clear facts and evidence showing no process at all occurred regarding Captain Torres' request for accommodation, TXDPS now seeks to eliminate the damages and attorneys' fees that were properly proven and awarded.

   a.   Captain Torres is Entitled to an Award of His Attorneys' Fees Under USERRA

TXDPS asserts that under Texas Law, the courts require that juries determine the reasonableness of any fees and therefore Plaintiff should have done so at trial here. Unfortunately for Defendant, this case does not arise under Texas Law. As the U.S. Supreme Court concluded earlier in this case, Texas is not immune from the requirements/enforcement of USERRA, which is a Federal law[3]. Therefore, the requirements of USERRA must be followed by the Texas Courts. Under USERRA "In any action or proceeding to enforce a provision of the chapter by a person … who obtained private counsel for such action or proceeding, **the court** may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses." (38 U.S.C. § 4323(h)(2) (emphasis added)).

---

[3] TXDPS originally challenged Captain Torres' suit based on its asserted sovereign immunity from a USERRA lawsuit in Texas State Court. The Supreme Court rejected this argument and held no state may assert sovereign immunity to a USERRA lawsuit in its state courts. *Torres v. Texas Dept. of Public Safety*, 597 U.S. 580 (2022).

Under Federal law a prevailing party may move for the court to award attorneys' fees as allowed under Fed. R. Civ. P. 54(d). Most importantly, "[a] fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Here, it is abundantly clear that USERRA is the only law applied to the substantive issues of this case and accordingly its provisions for attorneys' fees, namely being awarded by the court, not the jury, necessarily control.

Captain Torres has shown he is entitled to attorneys' fees under USERRA. "In light of Appellant's recovery under USERRA, … he is a prevailing party and thus entitled to attorneys' fees and costs." *Fryer v. A.S.A.P. Fire Safety Corp.*, 750 F. Supp. 2d 331, 335 (D. Mass 2010) (emphasis added)). As pointed out in the extensive briefs and hearing on this issue, Section 4302 also provides:

> (b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

(38 U.S. C. § 4302)

Texas state procedural case law on when to present attorneys' fees is not a barrier to Captain Torres seeking reasonable and necessary attorney's fees under USERRA. It is clear that USERRA prevents any State Law that would reduce or

eliminate Captain Torres' benefit of receiving reasonable and necessary attorneys' fees, subject to the discretion of "the Court." The attorneys' fees award here is not affected by any of the complaints made by Defendant and were properly awarded by the Court.

The trial court was presented with detailed contemporaneous records and affidavits supporting the lodestar fee award and, in its discretion, awarded those fees. (RR-8 RR-1477) Captain Torres' attorneys timely designated themselves as fee experts and presented and admitted into the record affidavits supported by evidence. (RR-8 p.23 RR-1477) TXDPS did not object to the reasonable amount of hours worked, did not designate an expert to opine about the reasonableness of the rates requested, and the unauthenticated exhibits they attached to their response were properly objected to. (RR-8 pp. 18, 41-43) Thus, as Federal law applies and the designated experts presented abundant proof of the reasonable and necessary lodestar fees, the trial court did not err in awarding reasonable and necessary attorneys' fees.

b. Captain Torres Was Entitled to the Damages Awarded in Accordance With USERRA

Service members who leave their civilian employment to serve in the military have a fundamental right to be fully reintegrated into jobs upon completing their service. USERRA sub-sections 4313(a)(1)(A) and (B) provide,

specific to the benefit of reemployment, "…a person is entitled to reemployment…[and] shall be promptly reemployed in a position of employment in which the person would have been employed if the continuous employment of such a person with the employer had not been interrupted by such service…[including] status and pay…" or "in the position of employment in which the person was employed on the date of the commencement of the service in uniformed services…." That means returning service members are reemployed in a position that reflects the trajectory their career would have taken had they not been absent for military service. This could mean a promotion, a raise, or other job benefits that the servicemember would have attained with reasonable certainty if not for the absence due to military service. (*See* 38 U.S.C. § 4313; 20 C.F.R. § 1002.191 ("As a general rule, the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence dues to uniformed service. This position is known as the escalator position.")))

There are, however, instances where reemploying the service member in their original or escalator position might not be feasible, especially if the servicemember has incurred a disability during their service, like Captain Torres. In such cases, employers must make "reasonable efforts" to accommodate the servicemember's disability and appropriately reemploy them in a suitable position

of equivalent seniority, status, and pay, the duties of which they are qualified to perform or could become qualified to perform with reasonable efforts by the employer. (38 U.S.C. § 4313(a)(3); 20 C.F.R. § 1002.225(a)). "If a position other than the 'escalator' position is offered to a returning disabled servicemember, full company seniority for all purposes is always to be accorded the disabled service person, regardless of whether seniority follows an employee under other circumstances." (H.R. Rep, No. 103-65, pt. 1, at 31-32 (1993), *as reprinted in* 1994 U.S.C.C.A.N. 2449, 2464-2465 (citing *Hembree v. Georgia Power Co.*, 637 F.2d 423 (5th Cir. 1981); and *Ryan v. City of Philadelphia*, 559 F.Supp. 783 (3rd Cir. 1984)).

If the employee cannot become qualified for the equivalent position with reasonable accommodation and qualification efforts by the employer, the employee must be placed in a position that, consistent with the circumstances of his or her case, is the nearest approximation to the equivalent position *in terms of seniority, status and pay*. (38 U.S.C. § 4313(a)(3)(B); 20 C.F.R. § 1002.225(b) (emphasis added); *see also* H.R. Rep, No. 103-65, pt. 1, at 31-32 (1993), *as reprinted in* 1994 U.S.C.C.A.N. 2449, 2464 ("If no such [equivalent] position exists, the nearest approximate position in terms of seniority, status and pay would be required to be found."); 70 Fed. Reg. 75246, 75277 (Dec. 19, 2005), available at 70 FR 75246-01, at *75277.)

TXDPS baselessly claims that Captain Torres requested an accommodation to the Driver's License office in a non-commissioned position, and therefore his lost wages should be calculated on the basis of that lower paying position. (TXDPS Appellate Brief pp. 20-23) TXDPS could not be more wrong. As Congress and the Fifth Circuit in *Hambree* confirmed above, "full company seniority for all purposes" was to be accorded to Captain Torres, whether he knew he was entitled to those benefits. (H.R. Rep, No. 103-65, pt. 1, at 31-32 (1993), *as reprinted in* 1994 U.S.C.C.A.N. 2449, 2464-2465 (citing *Hembree*, 637 F.2d 423) In other words, just because Captain Torres requested a lower paying job without understanding his rights, does not mean he is not entitled to the higher pay associated with his seniority. He is, and the law on this point is clear.

TXDPS fails to state any factual or legal basis for its conclusion that an improper measure of damages was awarded, and that Captain Torres should have only been paid as a Driver's License Examiner. TXDPS' assertion is in fact the exact opposite of what USERRA requires as outlined above. The jurors were presented with extensive pay, promotion and retirement documentary evidence and live calculations based on the position Captain Torres would have had but for his military service and resulting service-connected injury, including all seniority-based pay raises and annual pay increases TXDPS implemented for its employees. (RR-4 pp.79-109, 126-133 RR-11 Exh's. 68, 69, 104, 106, 109, 112, 113, 115,

117) The accurate pay and benefit numbers were established during the testimony of Captain Torres using TXDPS' own published pay scales and pay raise records, as well as ERS retirement calculation records. (RR-11, Exh. 117) All correct and applicable pay scale and pay categories were testified to and added up in front of the jury and admitted into evidence. (RR-4 pp.79-109, 126-133 RR-11 Exh's. 68, 69, 104, 106, 109, 112, 113, 115, 117) TXDPS' argument that Captain Torres should have instead had lesser pay is in direct contravention of USERRA's requirements. Therefore, there is no error by the trial court and the factual basis for the damages awarded are supported by the evidence.

### c.     TXDPS States no Basis for a Remittitur

TXDPS requested the trial court to grant a remittitur on the damage award for the same reasons outlined in section (a) above and now complains of error. The standard for remittitur of an actual damages finding is factual sufficiency. (*Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986)). The court must examine all the evidence to determine whether there is sufficient evidence to support the damage award and suggest a remittitur only if some portion is so factually insufficient or against the great weight and preponderance of the evidence as to be manifestly unjust. (*See id.)*

As stated above, USERRA requires servicemembers to be reemployed in a position that reflects the trajectory their career would have taken had they not been

absent for military service. This could mean a promotion, a raise, or other job benefits that the servicemember would have attained with reasonable certainty if not for the absence due to military service. (*See* 38 U.S.C. § 4313.) As discussed above, the jury was presented with detailed documentary evidence of pay scales, promotion dates, pay rates and testimony regarding the appropriate level of pay for each year Captain Torres was denied reemployment and the value of his retirement. (RR-4 pp.79-109, 126-133 RR-11 Exh's. 68, 69, 104, 106, 109, 112, 113, 115, 117) There is more than sufficient evidence in this case for the jury to determine the proper damages awarded and the trial court did not err in denying Remittitur.

### PRAYER

Therefore, Plaintiff/Appellee Captain Le Roy Torres respectfully requests that this Court affirm the trial court's Judgment and award of attorneys' fees in all respects.

Respectfully submitted,

By: /s/ Stephen J. Chapman
Stephen J. Chapman
**WEBB, CASON & MANNING**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone: (361) 887-1031
Facsimile: (361) 887-0903
State Bar No. 24001870
steve@wcctxlaw.com

Brian J. Lawler
*Pro Hac Vice*
**PILOT LAW, P.C.**
4632 Mt. Gaywas Dr.
San Diego, California 92117
Telephone: (619) 255-2398
Facsimile: (619) 231-4984
blawler@pilotlawcorp.com

**ATTORNEYS FOR APPELLEE**

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 6231 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ Stephen J. Chapman
Stephen J. Chapman

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen J. Chapman, certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record as required by the T.R.A.P., on this the 16th day of December, 2024.

Ken Paxton
Jeffrey C. Mateer
Scott A. Keller
John C. Sullivan (lead counsel)
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548

Jason T. Contreras
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

/s/ Stephen J. Chapman
Stephen J, Chapman

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer Pena on behalf of Stephen Chapman
Bar No. 24001870
jennifer@wcctxlaw.com
Envelope ID: 95360254
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellee's Brief
Status as of 12/16/2024 3:01 PM CST

Associated Case Party: Texas Department of Public Safety

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jason Contreras | | Jason.contreras@oag.texas.gov | 12/16/2024 2:39:04 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 12/16/2024 2:39:04 PM | SENT |

Associated Case Party: Leroy Torres

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen Chapman | 24001870 | steve@wcctxlaw.com | 12/16/2024 2:39:04 PM | SENT |
| Brian J.Lawler | | blawler@pilotlawcorp.com | 12/16/2024 2:39:04 PM | SENT |
| Matthew Manning | 24075847 | service@wcctxlaw.com | 12/16/2024 2:39:04 PM | SENT |